FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

SEP 0 8 2015

JAMES N. HATTEN, Clerk
By _____
Deputy Clerk

HONORABLE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA "ATLANTA Division"

| | |
|---|---|
| REBECCA B. DUWELL        (Plaintiff) | **"COMPLAINT** |
| DONALD G. JONES, ET AL    (Plaintiff) | CASE DOCKET #_____ |
| VS. | **1: 15 - CV - 3143** |
| **DEFENDANTS** | JURY TRIAL DEMAND |
| ATLANTA MEDICAL CENTER | ATLANTA MEDICAL CENTER & |
| DR. BHARAT R. NARAVETLA, ET AL | DR. BHARAT R. NARAVETLA, ET AL INSURANCE COMPANY # "A" |
| EMORY HEALTHCARE | EMORY HEALTHCARE INSURANCE #"B" |
| EMORY UNIVERSITY HOSPITAL | EMORY UNIVERSITY HOSPITAL & |
| CEO JOHN T. FOX, ET AL | CEO JOHN T. FOX, ET AL |
| KIZZY CALDWELL | DR. MITCHELL LEAVIT |
| INSURANCE COMPANY # "B" | |
| DELTA AIRLINES & INSURANCE CO. "C' | SEDGWICK & INSURANCE CO. "E" |
| UNITED HEALTHCARE & INSURANCE CO. "D" | |

---

**COMPLAINT FOR DAMAGES MEDICAL MALPRACTICE – HIPAA VIOLATIONS-
ERISA VIOLATIONS-NURSING HOME NEGLECT- PERFORMING
EXPERIMENTAL SURGERIES/PROCEDURES WITHOUT MY CONSENT –**

**HIPAA VIOLATIONS-MEDICAL KIDNAPPING**

---

**MAY IT PLEASE THIS MOST HON. USNDG JUDGE**

**NOW COMES** into this most Hon. USNDG court Rebecca B. Duwell in my individual capacity

& Donald G. Jones Georgia Statutory Common Law Husband since 1996, namely; Donald G.

Jones filing in my individual capacity this most respectful Complaint to preserve our U. S.

Constitutional 5th, 14, and 9th Amendment rights pursuant to FRCP Rule 4 against the above named Defendants, and such future defendants as the facts may warrant pursuant to FRCP Rules governing document, and deposition discovery FRCP Rules.4

## JURISDICTION FOR THIS COMPLAINT

**Jurisdiction** is conferred on the Hon. U.S. District Court for the Northern District of Georgia through U.S.C. 28 TITLE 1441, AND 1332 ( **DIVERSITY AND AMOUNT OVER $75,000.00 ).** Plaintiff Rebecca B. Duwell & Donald G. Jones and the Defendants live in different States/Counties, and as such this Complaint being filed in the Hon. U. S. Northern District of Georgia Atlanta Division is proper.

The amounts involved in the damages caused by the defendants in this Complaint exceed $75,000.00.

Additionally there are violations of *Federal HIPAA, ERISA, and Labor Laws* against Delta Airlines a federally licensed entity, overseen the U. S. Dept. of Aviation, Homeland Security, etc. whom are a party to the damages contained in this Complaint which also confer Jurisdiction on the Hon. U. S. District Court for the Northern District of Georgia "Atlanta Division", which constitute the rights for federal judicial relief.

### Statute of Limitations has two concurring prescription dates:

1) The botched surgery which caused the two massive brain strokes occurred on September 6, 2013. On September 7, 2013 Dr. Naravetla came to the ICU of Atlanta Medical Center, and said Rebecca had severe swelling on the right side of her brain, and he wanted to try a new technique which reduces the swelling around her brain, but it is primarily a Flu shot. On September 9, 2013

I, Donald G. Jones had Rebecca transferred to Emory University Hospital.

2) The 1st signs of paralysis and loss of speech did not become evident until approximately September 14, 2013 when Rebecca awakens from her partial coma, etc.

*Under Georgia's Statute of Limitations, namely; O.C.G.A. section 9-3-71(a), as well as O.C.G.A. section 9-3-71 (b)* allows for this cause of action to be proper, and to receive the judicial relief prayed for, as the date of prescription would be approximately 9-14-2015, date of this filing is 9-8-2015. USNDG was closed from 9-5-2015 thru 9-7-2015 Labor Day Holiday.

## DEFENDANTS IN THIS CIVIL COMPLAINT TO BE SERVED SUMMONS

The Defendants listed below are requested of the Hon. USNDG Clerk of Court to Seal and Return the attached Summons back to Plaintiff-Rebecca B. Duwell

| | |
|---|---|
| TENET HEALTHSYSTEM GB, INC. | ATLANTA MEDICAL CENTER, INC. |
| AGENT CT CORPORATION SYSTEM | AGENT CT CORPORATION SYSTEM |
| 1201 PEACHTREE STREET, NE, SUITE 1240 | 1201 PEACHTREE STREET, NE, SUITE 1240 |
| ATLANTA, GA. 30361 | ATLANTA, GA. 30361 |
| | |
| BHARAT NARAVELTA | TENET HEALTHSYSTEM GB, INC. & |
| BHARAT NARAVELTA | ATLANTA MEDICAL CENTER, INC. |
| INSURANCE COMPANY # "A" | INSURANCE COMPANY # "A" |
| 300 BOULEVARD NE, | 1445 ROSS AVE. SUITE 1400 |
| ATLANTA, GA. 30312-1206 | DALLAS, TEXAS 75202 |
| | |
| EMORY HEALTHCARE, INC. | EMORY UNIVERSITY HOSPITAL |
| AGENT JANE E. JORDAN | AGENT JANE E. JORDAN |
| 201 DOWNMAN DR. NE, 102 | 201 DOWNMAN DR. NE, 102 |
| ADMINISTRATION BLDG. | ADMINISTRATION BLDG. |
| ATLANTA, GA. 30322-1018 | ATLANTA, GA. 30322-1018 |

EMORY CENTER FOR REHABILITATIVE MEDICINE

AGENT JANE E. JORDAN

201 DOWNMAN DR. NE, 102

ADMINISTRATION BLDG.

ATLANTA, GA. 30322

JOHN T. FOX

1440 CLIFTON RD. NE SUITE 400

ATLANTA, GA. 30322

KIZZY CALDWELL

1440 CLIFTON RD. NE SUITE 400

ATLANTA, GA. 30322

MITCHELL LEAVITT

1440 CLIFTON RD. NE SUITE 400

ATLANTA, GA. 30322

INSURANCE COMPANY # "B" FOR

EMORY HEALTHCARE, INC.

EMORY UNIVERSITY HOSPITAL

EMORY CENTER FOR REHABILITATIVE MEDICINE

JOHN T. FOX –KIZZY CALDWELL-MITCHELL LEAVITT

AGENT JANE E. JORDAN

201 DOWNMAND DR., NE. 102

ADMINISTRATION BLDG.

ATLANTA, GA. 30322

DELTA AIR LINES, INC.

AGENT CORPORATION SERVICE COMPANY

40 TECHNOLOGY PARKWAY SOUTH SUITE 300

NORCROSS, GA. 30092

UNITED HEALTHCARE SERVICES, INC.

AGENT CORPORATION PROCESS COMPANY

2180 SATELLITE BOULEVARD, SUITE 400

GWINETT, DULUTH, GA. 30060

INSURANCE COMPANY # "C"

DELTA AIR LINES, INC.

AGENT CORPORATION SERVICE COMPANY

40 TECHNOLOGY PARKWAY SOUTH SUITE 300

NORCROSS, GA. 30092

INSURANCE COMPANY # "D"

UNITED HEALTHCARE SERVICES, INC.

AGENT CORPORATION PROCESS COMPANY

2180 SATELLITE BOULEVARD, SUITE 400

GWINETT, DULUTH, GA. 30060

SEDGWICK CLAIMS MANAGEMENT SERVICES, INC.

AGENT CT CORPORATION SYSTEM

1201 PEACHTREE STREET, NE, SUITE 1240

ATLANTA, GA. 30361

SEDGWICK CLAIMS MANAGEMENT SERVICES, INC.

INSURANCE COMPANY "E"

1100 RIDGEWAY LOOP RD.

MEMPHIS, TN. 38120-4053

## Short History of events leading up to this Complaint pursuant to FRCP Rule 8:

The issues are numerous, but I will start with the most damaging claims against TENET HEALTHSYSTEMS GB, INC. (TENET) D.B.A Atlanta Medical Center (AMC) & Dr. Bharath R. Naravetla AMC Surgeon.

 I Rebecca B. Duwell was a flight attendant for Delta Airlines for over 37 years until September 4, 2013. I was coming in from flying a 16 hour trip to Dubai when she had a fatigue attack on the plane around 4 a.m., an hour before it landed at Atlanta Hartsfield Airport. Delta had contracted with AMC to be their triage/trauma center for emergencies like these.

I was seen by the ER doctor who agreed she was exhausted, and needed rest. I was being discharged from AMC by the attending ER physician, when these two AMC medical staff individuals came into the ER room where myself, and 4 other Delta Flight Attendants were. One of the individuals was Dr. Bharat R. Naravetla, and his surgical nurse assistance.

Dr. Naravetla begins his sales pitch on allowing him to perform an anagram to check to see how much blockage was in Rebecca's Carotid Artery. I (Donald G. Jones) informed Dr. Naravetla that Rebecca has 70% blockage as her tests with life signs had shown us a few months ago, and that we were doing our research to see who was the best surgeon to do the procedure, if alternative medicine treatment did not work, which Rebecca was on. Dr. Naravetla begins his sales pitch on how he was the best in Atlanta, and that he had performed over 1500 of these procedures. His nurse was also selling us how AMC sent to get him to run that department of anagram/Angiogram/Angioplasty. After listening to them for over 20 minutes at about 6:30 a.m. in the morning we agreed to let him run the camera up Rebecca's Carotid Artery.

Dr. Naravetla came back with the same information we gave him that the artery was 70% blocked, and since he already had the camera, etc. in the artery why don't we allow him to install a stint over this artery to remove the blockage, and/or allow move blood to flow. I again informed him that we did not want to do it, and he then began to talk with the other flight attendants to get them to agree, etc. Needless to say he performed the surgery the next day 9-5-2013 around 12:30 p.m.

Subsequently thereafter they brought Rebecca from out of recovery, and I tried to talk to her, and she could not say a word. I told the nurse to get the doctor immediately, and they performed a cat scan and saw that the stint had ruptured, and Rebecca was having a stroke. Dr. Naravetla came

Page-6-Complaint-RBD/DGJ vs. AMC, Et Al

out, and said he had to remove the stint, and install another one because that one ruptured. I consented to have the second surgery done to get Rebecca out of harm's way.

In installing the second stint the surgeon, namely; Dr. Naravetla did not clamp the artery off before removing the ruptured stint, and blood clots shot up through Rebecca's brain, and caused her to have two massive brain strokes which paralyzed her from the neck down. Dr. Naravetla came to me with his nurse and explained the damaged AMC had caused. I was beyond shock, and disbelief.

I later learned that there were two other patients whom Dr. Naravetla had performed this procedure on within this same time period, and they two had to get the stints removed, and reinserted somewhere else.

AMC and Dr. Naravetla knew they had serious problems with either the stint procedure, the doctor, and/or faulty stints, or the combination of the two, and they did nothing to shut it down in the interest of saving lives.

I later learned that Dr. Naravetla had only been licensed in Georgia for 4 months prior to performing this procedure, and that he does not have the credentials he claimed he had. I attached the Physician Profile from the Composite State Board of Medical Examiners.

## ATLANTA MEDICAL CENTER & DR. BHARAT R. NARAVETLA, ET AL DAMAGES

### AMC 1)

Tenet HealthSystems GB, Inc. D. B. A. Atlanta Medical Center, ET AL (hereinafter referred to as AMC) willfully coerced me, namely; Rebecca B. Duwell (hereinafter referred to as RBD) into consenting to a surgery after they had sedated me in the Emergency Room on September 5,

2013.

### AMC 2)

AMC sent Dr. Bharath R. Naravetla to pressure me to have stint implants installed while I was under the influence of the medication AMC's Emergency Doctor had just given me to relax me, and to allow me to get some sleep after the fatigue attack I had which brought me to AMC in the first place.

### AMC 3)

AMC nor Dr. Naravetla informed me they had problems with the procedures and that it would be a risk to have the procedure done. They did not follow HIPAA, nor *Georgia's Patient right to know disclosure laws* prior to  inducing me into consenting to this procedure, after a 16 hour trip to Dubai, and sedation being given by the ER doctors, so that I and Don could make an informed decision on whether the benefits outweigh the risk in going through with the surgery.

### AMC 4)

AMC knew they had problems with the surgeries Dr. Bharath R. Naravetla was performing, as they were fully aware that several other patients had similar, if not more fatal results after allowing Dr. Bharath R. Naravetla to perform these stint operations.

### AMC 5)

AMC's medical equipment failed twice during the stint insertion, and deployment, and I had to endure the excruciating pain of 20 to 25 minutes of manual emergency treatment until these medical equipment malfunctions were corrected.

**AMC 6)**

AMC and Dr. Bharat Naravetla knew they had problems with these stint procedures and the equipment used to assist these surgeries, as there were other patients whom ended up similarly as me, or even worse. Nevertheless, they continued to push these surgeries on me while I was under sedation, and my husband whom insisted he wanted to get a second opinion. But the duress and fear implanted in both of us by Dr. Bharat Naravetla, and his nurse assistance won over our better judgment.

**AMC 7)**

AMC knew that Dr. Bharath R. Naravetla had just been licensed in the State of Georgia by the Georgia State Board of Medical Examiners on or about May 3, 2013approximately 4 months prior to performing the botched surgeries on installing stints on my Carotid Artery. AMC knew Dr. Bharath R. Naravetla had several failed similar surgeries prior to inducing me to consent to allow Dr. Bharath R. Naravetla to perform the surgeries on me while I was sedated from the Emergency room Doctor.

**AMC 8)**

Dr. Bharath R. Naravetla caused me to have two massive brain strokes from the botched surgeries, and has left me in a wheelchair unable to walk, talk, o care for myself without the help of my common-law husband, namely; Donald G. Jones my primary caregiver.

**AMC 9)**

AMC and Dr. Bharath R. Naravetla used experimental drugs to try to reduce the swelling on my brain which caused further complications, as these drugs were designed to prevent the flu and

similar respiratory complications, but not post stroke treatment such as mine.

## AMC 10)

AMC and Dr. Bharath R. Naravetla have taken my youthful life from me, and have deprived me of being able to care for my love ones, and to enjoy the compassion and simple pleasures of sexual enjoyment with my 20 year common-law husband, namely; Donald G. Jones.

## AMC 11)

AMC and Dr. Bharath R. Naravetla have taken my 37 year career as a Senior flight attendant and have caused me to be placed in dire financial hardships and have reduced by monthly income down t 60% of my monthly gross income.

## AMC 12)

AMC and Dr. Bharath R. Naravetla have taken my career as a real estate agent, and aesthetician from me and have deprived me of being able to enjoy a more lucrative financial lifestyle as I planned to do at this point in my life.

## AMC 13)

AMC and Dr. Bharath R. Naravetla have caused me to have an enormous amount of medical bills from doctors, therapists, prescription drugs, nursing home supplies, etc. which has deprived myself, my children, and my love of my life, namely; Donald G. Jones from enjoying our retirement savings in the way we planned as a result of their medical malpractice, and HIPAA violations from coercing me to agree to a surgery which was not a life saving preventive measure, and was not the reason I was brought to AMC in the first place.

## **AMC 14)**

AMC and Dr. Bharath Naravetla violated my (Rebecca B. Duwell's) HIPAA rights by not doing the following, but not limited to these violations:

1) **Duty:**  AMC & Dr. Bharath Naravetla owed Rebecca a duty of due care to ensure the safety of the procedure they were performing on me.

2) **Breach:**      AMC & Dr. Bharath Naravetla violated and breached the duty owed to me while under their medical care.

3) **Causation:**    AMC & Dr. Bharath Naravetla's breach of their medical duty is the proximate and factual cause of my injuries.

4) **Injury:**_____AMC & Dr. Bharath Naravetla's wrongful actions and inactions have caused me to suffer enormous physical, mental, emotional injuries, as well as a large amount of property, and income damages/loss.

5) Under my HIPAA rights AMC & Dr. Bharath Naravetla failed to get the following, or provide the following:

a) Determine my Decision-Making capacity under sedation from ER care.

b) Get my informed consent through properly disclosing the risk of the procedure, and that they knew there were problems with this procedure and/or the doctor performing it.

   1) The components of informed consent are clear and very relevant here:

   2) AMC and Dr. Bharath Naravetla must ascertain I have the capacity and ability to

make the medical decision.

3) AMC and Dr. Bharath Naravetla must disclose information on the treatment, test, or procedure in question, including the expected benefits and risks, and the likelihood (or probability) that the benefits and risks will occur.

4) I must voluntarily give AMC & Dr. Bharath Naravetla my voluntary consent without coercion or duress.

c) AMC and Dr. Bharath Naravtla did not give me the right to refuse treatment as it was not a life saving treatment.

d) Etc.

### AMC 15)

Wherefore my Civil Complaint for the damages in ***AMC 1 thru AMC14*** which Atlanta Medical Center and Dr. Bharat Naravetla caused to me, and for all future medical treatment, and expenses is in the full amount of $12 million dollars from Atlanta Medical Center and Dr. Bharath R. Naravetla as well as their Insurance Company # "X' (to be further named in their legal capacity after disclosures from AMC and Dr. Bharath R. Naravetla make this information available).

### AMC 16)

Wherefore my Civil Complaint further is in the full amount of $6million dollars for the pain and suffering, mental and emotional anguish which has been, and continues to be a burden to my life as a result of the an incompetent Doctor as well as overseen by a neglectful hospital namely; Atlanta Medical Center Dr. Bharath R. Naravetla

## AMC 17)

I Donald G. Jones pursuant to FRCP Rule 8 condense my complaints to incorporate AMC 1 thru 16 in my personal physical, emotional, and mental sufferings, as well as my personal business capacity to confirm that I am owed approximately $4million dollar in lost wages, pain and suffering, and for the lost of emotional companionship, etc. as a result of the medical negligence, and the unlawful coercing of my common-law wife to agree to a surgery which was not life saving, and was performed by an incompetent Doctor as well as overseen by a neglectful hospital namely; Atlanta Medical Center and Dr. Bharath R. Naravetla.

## HISTORICAL SUMMARY OF EVENTS TO COMPLAINT AGAINST
## EMORY HEALTHCARE, EMORY UNIVERSITY HOSPITAL &
## EMORY CENTER FOR REHABILITATIVE MEDICINE

Emory Center for Rehabilitative Medicine (**hereinafter referred to as Emory**) begin a process of keeping family, and friends from seeing Rebecca. They claimed that Rebecca only wanted to see her daughter Asia V. Duwell whom was attending Azusa Pacific University in Azusa California. Emory allowed the following things to happen to Rebecca while they had Medically Kidnapped Rebecca and were performing experimental procedures on Rebecca, as well as the damages for nursing home abuse, and neglect.

## ECHM 1)

Out of the abundance of caution Emory Healthcare is the parent corporation of Emory University Hospital, and Emory Center for Rehabilitative Medicine, and as such all three entities are

considered the alter ego of the other, and therefore they shall be (**hereinafter referred to as Emory**).

Emory through it's CEO John T, Fox denied my rights to see my wife, and to assist in making medical decisions for her post stroke recovery without her informed consent, or without my informed consent.

On or about October 9, 2013 Emory refused to allow me to see my wife (Georgia **was a common-law state until around 1997 or 1999).** They changed the law that if you were not living together as domestic partners prior to then, then you had to obtain a marriage license and get married the traditional way.

### ECHM 2)

Emory denied my rights to care for Rebecca whom I had been living together since around August of 1995. Therefore my rights as her husband were trampled upon without a court order. Emory through Emory's CEO John T. Fox was sent numerous certified letters, faxes, and phone calls by me, namely; Donald G. Jones of both my Irrevocable Superior Power of Attorney over Rebecca, as well as my rights under Georgia's former Common-law statutes.

### ECHM 3)

While Rebecca was under this unlawful medical kidnapping, Emory allowed Rebecca to be unattended, and she fell on her head twice in the same day.

Emory caused greater harm to Rebecca when they left Rebecca unattended and she fell twice in the same day on the front of her head, leaving more damage to her brain, and other motor skills.

## ECHM 4)

Emory denied my rights as Rebecca's POA, and 20 year common-law husband respectful requests for Rebecca to be transferred to another rehab facility where she could get better care.

## ECHM 5)

Emory Social worker, namely; Kizzy Caldwell and Dr. Mitchell Leavitt claimed Rebecca told them she did not want to see anyone. If she could talk back on or about October 9, 2013, then why can't she talk now on August 31, 2015, nor since I saw her at Emory in October of 2013?

Emory unlawfully used this lie to medically kidnap Rebecca, and perform procedures, and treat Rebecca in the most inhumane way, because no one locally could go and see how Rebecca was doing. They sent me a ***Certified Letter instructing me they did not want me on the premises*** anymore because I wanted Rebecca transferred from Emory. They only allowed our daughter, namely; Asia V. Duwell whom was going to college in Azusa California, and could not come see her mother every day. Emory even refuse to allow Rebecca's son, namely; Ian N. Duwell whom live with us locally herein Tyrone, Georgia from seeing his mother for no other reasons than what is stated above.

## ECHM 6)

Emory begin to lock everyone out after the head injuries to Rebecca, and Furthermore Emory began performing a lot of experimental procedures on Rebecca which caused further damage to Rebecca's recovery.

## ECHM 15)

Emory unlawfully transferred Rebecca to Briarcliff Haven Rehab Center around October 30, 2013 without my consent, or without informing me of her whereabouts.

Everything was being done long distance with Asia, whom did not know anything about what was going on. Asia was 22 year old at that time.

## ECHM 8)

Emory's unlawful medical kidnapping and refusal to allow me to know what is going on with my wife, namely; Rebecca B. Duwell cause me to hire an attorney, namely; State Representative Pamela Stephenson to help me get her free from those facilities.

I brought Rebecca home on January 2, 2014, She could not walk, or talk, and still cannot walk or talk, but is getting better.

## ECHM 9)

I Rebecca B. Duwell was denied my HIPAA rights by Emory in determining where I wanted to be medically care for.

## ECHM 10)

I Rebecca B. Duwell was denied the rights as a mother to see my children by Emory while I was in Emory's care.

## ECHM 11)

I Rebecca B. Duwell was denied the rights to have my common-law husband attend to my medical, emotional, mental, and physical needs by Emory's unlawful medical kidnapping of me.

## ECHM 12)

I Rebecca B. Duwell and Donald G. Jones was refused by Emory University Hospital to have the neuro doctor of our choice assigned to Rebecca's care when she was transferred from AMC. We requested through CEO John T. Fox and the head of neuro surgery for Dr. Barrow to take over Rebecca's case personally as time was of t he essence. Emory refused to grant our HIPAA request. Instead they allowed a close friend of Dr. Bharat Naravetla, namely; Dr. Vitadel to continue being over Rebecca's ICU-Neuro Recovery stay at Emory University Hospital.

## ECHM 13)

Emory and the Staff of Emory Center for Rehabilitative Medicine(**hereinafter referred to as Emory Center)** violated my (Rebecca B. Duwell's) HIPAA rights by not doing the following, but not limited to these violations:

1) Duty:  Emory and Emory Center owed Rebecca a duty of due care to ensure the safety of the procedure they were performing on me.

2) Breach:       Emory and Emory Center violated and breached the duty owed to me while under their medical care.

3) Causation:      Emory and Emory Center's breach of their medical duty is the proximate and factual cause of my injuries.

4) Injury: Emory and Emory Center's wrongful actions and inactions of depriving me of the right to chose the rehab center of my choice and from denying me the rights to be cared

Page-17-Complaint-RBD/DGJ vs. AMC, Et Al

for by my 20 year husband, and/or my son have caused me to suffer enormous physical, mental, emotional injuries, as well as a large amount of property, and income damages/loss.

5) Under my HIPAA rights Emory and Emory Center failed to get the following, or provide the following:

a) Determine my Decision-Making capacity under my present stroke condition when discussing my medical decisions with my daughter namely; Asia V. Duwell whom most certainly did not know what she was agreeing to on y behalf.

b) Emory and Emory Center failed to get my informed consent through properly disclosing the risk of the experimental treatments post-stroke which caused greater harm to my ability to recover at an earlier stage of the post surgery period.

   1) The components of informed consent are clear and very relevant here:

   2) Emory and Emory Center must ascertain I have the capacity and ability to make the medical decision.

   3) Emory and Emory Center must disclose information to me and/or a competent knowledgeable family member such as my husband, namely; Donald Jones on the treatment, test, or procedure in question, including the expected benefits and risks, and the likelihood (or probability) that the benefits and risks will occur.

   4) I must voluntarily give Emory and Emory Center my voluntary consent without coercion or duress.

c) Emory and Emory Center knew of my condition and failed to put in place a supervision program which would guarantee my safety from any potential slips and falls.

d) Emory and Emory Center owed to me the duty of :

1) Adequate monitoring of every minute and hour of my stay at their facility

2) Emory and Emory Center failed to keep adequate staff to monitor my safety because of their internal policy cuts, and understaffing.

3) Emory and Emory Center caused greater harm to my recovery from the two times they allowed me to fall out of the bed onto my forehead causing greater brain damage and further impairing my ability to make a full and complete recovery.

4) These are clear and undisputed violations of my HIPAA rights, and Georgia's Patient's Rights to be given a level of care and safety which would guarantee my U. S. Constitutional rights to be treated in a fair and descent manner according to our U. S. Constitution's Due Process Clause which was not followed in medically kidnapping me from my husband, and my son..

## ECHM 14)

I Rebecca B. Duwell was grievously injured from the neglectful treatment of Emory as a result of being denied daily visits from my family, and my friends while in their Rehab facility.

Wherefore I Rebecca B. Duwell make a claim in this Complaint against Emory in the amount of $3 million dollars for the damages contained in *ECHM  1 thru EMCH 12 above* , which caused

personal injuries, and neglectful treatment I received in their rehab facility. I further make a claim in this Complaint against Emory in the amount of $6 million dollars for violations to my HIPAA rights, and denying me the rights to be cared for at a facility of my choosing, and for the pain and suffering I received under their care, and still have scars of those events in my mental, and emotional psyche which haunt me unto this day.

Wherefore I Donald G., Jones make a claim in this Complaint against Emory Healthcare, Emory University Hospital and Emory Center for Rehabilitative Medicine (**collectively Emory)** in the amount of $2 million dollars for the physical hardships, financial hardships which Emory caused, and still is causing to myself as a result of their damages caused in items ***ECHM 1 thru EMCH 13 above***. I further make acclaim against Emory in this Complaint in the amount of $4million dollars for the pain and suffering I have, and still am experiencing as a result of their unlawful denials of my rights to care for my wife, and as a result of their unlawful medical kidnapping, and inducing Rebecca with experimental procedures during my unlawful lockout while Rebecca was at their rehab facility.

## HISTORICAL SUMMARY OF EVENTS TO COMPLAINT AGAINST

## DELTA AIRLINES UNITED HEALTHCARE & SEDGWICK

On or about September 4, 2013 I was returning home from a 16 hour flight as a Senior Flight Attendant for Delta Airlines from Dubai. Approximately 4 a.m. I had a fatigue attack and was taken to Delta Airlines Trauma hospital, namely; Atlanta Medical Center. I was not asked by Delta Airlines what hospital did I want to go to, but was taken there by Delta Airlines officials whom claim this was Delta's assigned trauma center.

AMC's emergency room saw me and also confirmed that I had a fatigue attack and was able to be taken home by her husband Donald G. Jones. AMC's facilities were not the best place for me to be taken to, as I preferred to go to Grady Hospital, or Piedmont Hospital instead of AMC. During my stay at AMC's Emergency room I was inflicted by items *AMC 1 thru AMC17* and *ECHM1 thru ECHM 14* above, which is incorporated into this Complaint against Delta Airlines by reference.

Subsequently thereafter I have been denied reimbursement by Delta Airline's Healthcare manager, namely; United Healthcare for medical expenses related to my injuries in the approximate amount of $82,000.00 all in violations of ERISA, and HIPAA statutes without any just cause whatsoever.

Subsequently thereafter Delta Airlines and their Long Term Disability Payroll managers, namely; Sedgwick have denied me my fair compensation for my loss wages pursuant to my Disability Payroll guidelines which have been in effect for over 37 years, which is the approximate time I worked for Delta prior to these injuries. Sedgwick has further cut my Long Term Disability benefits down to 8% of my gross payroll trying to force me to sign over to them my SSI Disability benefits. Sedgwick has demanded that I send them a signed blank check to allow them to withdraw from my Delta Community Credit Union account.

### DAUHS 1)

Delta Airlines *(hereinafter referred to as Delta)* on September 4, 2013 violated my HIPAA rights by not allowing me to go to the hospital of my choice during my fatigue attack on their airplane.

### DAUHS 2)

Delta failed to provide the level of care for my welfare as my employer during my fatigue attack on September 4, 2013. Denial of my Safe Employment safety rights by Delta.

### DAUHS 3)

Delta failed to check the quality assurance of AMC's emergency room doctors, and surgeons prior to bringing me to AMC against my HIPAA rights to ensure I would receive the best medical treatment available while being an employee of Delta.

### DAUHS 4)

Delta has violated my ERISA rights, and has denied and/or ignored my workers compensation claims, and refused to pay me according to my original employment contract with Delta which has been in effect for over 39 years to date, 8-31-2015.

### DAUHS 5)

Delta and United Healthcare (*__hereinafter referred to as United__*) have unjustifiably denied reimbursing me for over $82,000.00 of medical expenses pursuant to my ERISA rights, and my rights under my Healthcare plan which is over 39 years in effect.

### DAUHS 6)

Delta and United have not reimbursed me one dollar for any of the receipts I have submitted to Delta and United in the last 22 months.

### DAUHS 7)

Delta and United have misplaced my appeal documents, and have in numerous cases used the wrong provider for the reimbursement, and/or appeal process, and have caused undo financial, emotional, physical hardships on myself, and my family members.

### DAUHS 8)

Delta and United have selected post recovery doctors and therapists whom have had a record of complaints by prior patients, and as such have set my recovery back significantly.

### DAUHS 9)

Delta and their Long Term Disability payroll managers, namely; Sedgwick (***hereinafter referred to as Sedgwick)*** have denied paying me according to the terms of my 39 year employment contract during my short term, and long term disability recovery period, all in violation of my ***ERISA rights***, as well as my Federal and State of Georgia Labor Law rights..

### DAUHS 10)

Delta and Sedgwick have further cut my Long Term Disability benefits down to 8% of my gross payroll trying to force me to sign over to them my SSI Disability benefits all in violations of my ***ERISA rights***, as well as my Federal and State of Georgia Labor Law rights.

### DAUHS 11)

 Delta and Sedgwick have demanded that I send them a signed blank check to allow them to withdraw from my Delta Community Credit Union account for some alleged overpayment of my fringe benefits, all in violations of my ***ERISA rights***, as well as my Federal and State of Georgia Labor Law rights.

**DAUHS 12)**

Delta and United as well as Sedgwick have ignored all administrative efforts to resolve these claims prior to seeking judicial relief, but to no avail. Therefore this civil complaint is timely and ripe for litigation.

Wherefore I Rebecca B. Duwell make a claim in this complaint against Delta, United and Sedgwick for the damages caused in items *DAUHS1 thru DAUHS 12 above* in the amount of $82,000.00 for the medical expenses, and out of pocket expenses which are reimbursable from 1-18-2014 until 8-31-2015, $2million dollars for the financial hardships, and another $2million dollars for the emotional, mental, and physical pain and suffering. I further make a claim against Delta direct for denials of my workers compensation claims and for violations to my employment contract pursuant to my HIPAA rights, and pursuant to *ERISA rights*, as well as my Federal and State of Georgia Labor Law rights, in the amount of $5million dollars.

## CONCLUSIONS AND LEGAL ARGUMENTS FOR PRO SE STANDARDS PURSUANT TO ESTABLISH PRECEDENT OF FEDERAL AND STATE LAWS

### Rbd/dgjls-1)

Plaintiff Rebecca B. Duwell and Donald G. Jones incorporate into this Civil Complaint the following precedents in determining dismissal pursuant to FRCP Rules, most particularly 8, 9, and 12.

   *1) In Sherar v. Cullen, 481 F. 2d 946 (1973) it reads, "There can be no sanction or penalty imposed upon one because of his exercise of Constitutional Right s"*

2) This case law nullifies the unconstitutional *Martin Trigona* sanction issued against Plaintiff Jones by USNDG Judge Timothy Batten, Sr. whom granted this unconstitutional relief to an unlicensed attorney from Louisiana, unlawfully practicing law in the USNDG.

3) It was held in *Puckett v. Cox, 456 F. 2d 233 (1972) (6th Cir. USCA),* that a pro se complaint requires a less stringent reading than on drafted by a lawyer per Justice Black in *Conley v. Gibson.*

4) It was held in Picking *v. Pennsylvania Railway, 151 F. 2d 240, Third Circuit Court of Appeals,* that the plaintiff's civil rights pleadings was 150 pages and described by a federal judge as "inept". Nevertheless, it was held "Where a plaintiff pleads pro se in a suit for protection of civil rights, the Court should endeavor to construe Plaintiff's Pleadings without regard to technicalities".

5) It was held in *Elmore v. McCammon (1986) 640 F. Supp. 905* ".....the right to file a lawsuit pro se is one of the most important rights under the constitution and laws".

6) It was held in Jenkins v. McKeithen, 395 U. S. 411, 421 (2959); Picking v. Pennsylvania R. Co. , 151 D Fed 2nd 240, Pucket v. Cox 456 2nd 233,, that a pro se pleadings are to be construed without regard to technicalities; pro se litigants' pleadings are not to be held to the same standards of perfection as lawyers.

7) It was held in *Maty v. Grasseli Chemical Co., 303 U. S. 197 (1938)* that Pleadings are intended to serve as a means of arriving at fair and just settlements of controversies between litigants. They should not raise barriers which prevent the achievement of that end. Proper pleadings are important, but its importance consists in its effectiveness as a

Page-25-Complaint-RBD/DGJ vs. AMC, Et Al

means to accomplish the end of just judgment".

8) It was held in *Haines v. Kerner, 404 U. S. 520 (1971) the U. S. Supreme Court* held that pros pleadings should be held to "less stringent standards" than those drafted by attorneys.

9) Plaintiff Jones and Duwell have complied with the Rules Enabling Act, and with the FRCP rules with the highest regards for respect of our laws. In those cases where prior rulings have been unconstitutional they have been set aside for the more correct standard of the application of fair, and just rulings by an Article III Federal Judge.

At present numerous attorneys in Georgia, Florida, and New Orleans have refused to get involved in this case because of the threats of USNDG Judge Timothy Batten, Sr. issued in his unconstitutional *Martin Trigona sanction*, which states that any attorney organization whom represent Donald G. Jones, and eluded to Rebecca B. Duwell would be sent to jail, held in contempt of court, levied with sanctions. As a result of this unconstitutional order we have been denied our U. S. Constitutional right to be represented by legal counsel. As such we are forced to again endure the continued pain of these nightmarish and inhumane treatments by individuals, and entities that have the highest public trust. Plaintiffs Rebecca B. Duwell and Donald G. Jones will support t his Civil Complaint with affidavits, sworn testimonies, and document productions which will further validate the integrity of this Civil Complaint.

Plaintiffs Rebecca B. Duwell and Donald G. Jones has attached to this Civil Complaint the Medical Affidavit of Dr. Edward Mallory attesting to the medical malpractice of the Defendants, therefore allowing for this Civil Complaint to move forward for federal judicial relief as prayed.

Wherefore Plaintiff Rebecca B. Duwell and Donald G. Jones pray for the relief sought in this

Civil Complaint and any other Judicial Relief this Hon. USNDG Judge deems appropriate to

compensate the Plaintiffs for the damages suffered. Plaintiff prays for a trial by jury in the most

Expeditious manner possible in getting this matter before a set of Jurors of our peers.

Respectfully Submitted by

REBECCA B. DUWELL

DONALD G. JONES

110 KETTERING TRACE

110 KETTERING TRACE

TYRONE, GA. 30290

TYRONE, GA. 30290

HOME-770-703-2576          CELL-504-339-8052

Email no1mrmoneyjones@aol.com

## CERTIFICATE OF SERVICE

WE CERTIFY that all copies of any of the attached Civil Complaint will be served on the

Defendants all in accords with FRCP 4 as soon as we receive the sealed Summons by a party not

related to any matters in this Civil Complaint, this 6th day of September, 2015

*Rebecca B. Duwell*

REBECCA B. DUWELL

110 KETTERING TRACE

TYRONE, GA. 30290

HOME-770-703-2576        CELL-504-339-8052

Email no1mrmoneyjones@aol.com

*Donald G. Jones*

DONALD G. JONES

110 KETTERING TRACE

TYRONE, GA. 30290

**AFFIDAVIT OF G. EDWARD MALLORY, D. O.**

STATE OF FLORIDA

COUNTY OF BREVARD

1. I am a Medical Expert as defined by Florida Statues 766.102, 766.202, and 766.203 of Florida law, and that I am regularly engaged in the practice of my profession, hold a medical health care professional degree from a university or college, and have had special professional training and experience and possess special health care knowledge and skill about the subject upon which I provide this opinion.    I am residency trained and board certified in Emergency Medicine and licensed to practice in the state of Florida.    I am currently, actively practicing Emergency Medicine in the state of Florida.    I have not rendered any previous medical opinions which have been disqualified.

2. I have reviewed the complete hospital records of Rebecca Duwell from Atlanta Medical Center from September 5, 2013 to September 9, 2013.

3. It is my medical opinion based upon the above referenced documents as well as my Education, Dr. Bharath Naravetla, M. D. deviated from the acceptable and appropriate standard of care and treatment of Rebecca Duwell with regard to the following:

   a. On September 5, 2013 Rebecca Duwell was admitted to Atlanta Hospital for at least 2 tonic-clinic seizures and she had no previous history of a seizure disorder.    In the Emergency department a MRA of the neck revealed a 70% stenosis of the Left Internal Carotid Artery.

   b. On September 5, 2013 Dr. Bharath Naravetla performed a Cerebral arteriogram with mechanical thrombectomy and stent placement.

   c. Several hours after the procedure it was noted Rebecca Duwell had developed right sided weakness, dysarthric speech, and confusion. A CTA of the extracranial carotid circulation revealed an occlusion of the left common carotid artery and internal carotid artery.    The stent was present but the occlusion persisted.

   d. On September 6, 2013, Dr. Naravetla performed a second Cerebral arteriogram with mechanical thrombectomy and stent placement.    After this procedure, the left common carotid and internal carotid arteries showed successful. recanalization

e. On September 7, 2013, a repeat CT scan of the brain revealed a new infarct of the left frontal lobe and both the anterior cerebral and middle cerebral artery distribution.

f. Despite the successful second procedure, Rebecca Duwell is alert, but cannot follow commands, has a right facial droop, global aphasia, grimaces to pain, and has right hemiplegia.

4. It is my medical opinion that reasonable grounds exist by for Rebecca Duwell to Initiate medical negligence litigation against Dr. Naravetla, M. D.

5. I further state that to the best of my knowledge, I have never had any opinions disqualified in any administrative forum, Court of law, or other proceedings, nor have I ever been disqualified as an expert witness. I have never been found guilty of fraud or perjury in any jurisdiction.

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
G. Edward Mallory, D. O.

The foregoing Affidavit was acknowledge before me, an officer duly authorized in the State and County aforesaid, to take acknowledgement, this ____ day of September, 2015 who is personally known to me or has produced _____ as identification.

_____

Notary Public, County of Brevard, State of Florida

My commission expires: 03/03/2016

_____
Printed name of notary